**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1394-17T1

SCOTT FISHBONE,

     Plaintiff-Appellant,

v.

CHASE PARTNERS, LLC and
CLARK I. HAMILTON,

     Defendants-Respondents.

_____

Argued November 28, 2018 – Decided February 5, 2019

Before Judges Koblitz, Currier, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2283-12.

Jay J. Rice argued the cause for appellant (Nagel Rice, LLP, attorneys; Jay J. Rice, of counsel and on the brief; Randee M. Matloff, on the briefs).

Tod S. Chasin argued the cause for respondents (Budd Larner, PC, attorneys; James B. Daniels and Tod S. Chasin, on the brief).

PER CURIAM

In this matter, before this court for a second time after a remand and bench trial, plaintiff Scott Fishbone appeals from the May 22, 2017 final judgment dismissing his complaint. We affirm.

Plaintiff was an employee of Advance Residential Communities, Inc. (ARC). In 2003, ARC entered a joint venture agreement to develop residential properties with defendants Chase Partners, LLC and Clark Hamilton. Thereafter, the parties executed an incentive compensation agreement (incentive agreement). The incentive agreement entitled plaintiff to compensation for his role in the joint venture's projects if: 1) a "capital event" occurred; or 2) ARC and defendants terminated the joint venture agreement and the termination resulted in a "distribution" to defendants.

In 2010, ARC and defendants terminated their joint venture agreement. As part of the settlement of the ensuing litigation, defendants transferred their interest in a residential property located in Union, New Jersey to ARC. All parties then dismissed their respective claims. Defendants received $167,600 "[i]n exchange for [Hamilton's and Chase's] execution of this Agreement and the Transfer Agreement."

Upon learning of the payment, plaintiff requested compensation for the Union property under the incentive agreement, which defendants denied. As a

A-1394-17T1

result, plaintiff filed a complaint, alleging breach of the incentive agreement. The trial court granted summary judgment to plaintiff, finding he was entitled to incentive compensation because defendants received a "distribution" from the 2010 settlement agreement. On appeal, we reversed and remanded, finding an issue of fact due to the ambiguity of the term "distribution" in the incentive agreement. See Fishbone v. Chase Partners, LLC, No. A-4003-13 (App. Div. Feb. 26, 2016).

On remand, after conducting a bench trial, the trial judge found the $167,600 defendants received from the 2010 settlement agreement was not a distribution, precluding plaintiff from collecting incentive compensation. The judge assessed the parties' intent of the term "distribution" at the time of their contract, and found the parties "understood the term distribution in the context of such an incentive compensation arrangement to mean not merely any payment received by Hamilton . . . but payment representing Hamilton's share . . . of net profits from a project." As the Union property generated no net profits at the time of the 2010 settlement agreement, the trial court concluded no distribution occurred and, therefore, plaintiff was not entitled to incentive compensation.

On appeal, plaintiff argues the trial court erred in: 1) its interpretation of "distribution"; 2) failing to shift the burden of persuasion to defendants to show

3

the $167,600 was not a distribution; and 3) not holding an ambiguous term against the party who insisted on its inclusion, the doctrine of contra proferentem.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). This court "should not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Cesare, 154 N.J. at 412).

The parties disputed the interpretation of "distribution." As a result, the trial judge conducted a bench trial, assessed the parties' credibility, and issued a comprehensive oral decision on May 9, 2017.

The trial court reasoned that plaintiff had to demonstrate two elements to "carry his burden of establishing entitlement to the $125,000.00 [incentive agreement]." Plaintiff had to show "there was a 'capital event' or 'termination

of the contractual relationship between ARC and Hamilton,'" and, "as a result of either such event . . . or transaction, there was a 'distribution' to Hamilton from ARC" for the Union project.

Although the trial judge determined plaintiff satisfied the first element as ARC and Hamilton terminated their contractual relationship with the 2010 settlement agreement, he failed to establish the second prong because the $167,600 paid to defendants in the 2010 settlement agreement was not a "distribution" under the incentive agreement.

In his analysis, the trial judge found "the payment of $167,600 must be understood in the context of a settlement in which the parties globally release their claims," as "[t]he termination of Hamilton's interest in the Union [project] was one component of the parties' settlement agreement." The other component was the dismissal of the claims and counterclaims Hamilton and ARC had lodged against each other. Therefore, the judge held,

> Given the nature, purpose, and explicit text of the agreement, it is certainly not possible to conclude that the sole function served by the $167,600 payment was a payment . . . for the transfer of the membership interests, nor is it possible to determine if even a specific quantifiable portion of the payment is attributable solely to the membership interest in [the] Union [project].

A-1394-17T1

Although the - - the amount itself, $167,600, appears precise . . . [plaintiff] has not supplied any evidence for that precision that would support his claim, such as a calculated value of Hamilton's share of Union's profits. The [c]ourt finds the record permits no conclusion, other than the amount was simply a component of the overall settlement.

Thus, the trial court reasoned the sum Hamilton received in the 2010 settlement "was a nominal payment given in consideration of the parties' agreement to terminate what at the time was an unsuccessful project as to which the parties have traded allegations of mismanagement and breach." As such, the 2010 settlement could not be a distribution because plaintiff and defendants "understood the term distribution in the context of such an incentive compensation arrangement to mean not merely any payment received by Hamilton . . . but payment representing Hamilton's share . . . of net profits from a project." Specifically, the court found,

> Hamilton intended and Fishbone understood that the incentive bonus compensation . . . [was] offered to reward extraordinary performance above and beyond that required for ARC salary and bonus participation and to be paid upon a closing or comparable transactional event generating profits for the venture which Hamilton received as his percentage share.

> Hamilton would pay these amounts from Hamilton's share of such profits. Although the terms on which Hamilton agreed to pay incentive compensation bonuses to Fishbone changed in certain

6

ways . . . the [c]ourt finds Hamilton always intended and Fishbone understood these payments would be made from Hamilton's share of profits resulting from a successful project.

Since the settlement was not Hamilton's net profit, "as there were no profits on the Union project to distribute," plaintiff was not entitled to a distribution.

The trial court also addressed plaintiff's argument regarding the doctrine of contra proferentem, noting the doctrine is the "rule of interpretation of the last resort." As the doctrine is only used if a court is unable to determine the contracting parties' intent through the agreement's text or intrinsic evidence and if there is unequal bargaining power between the parties, the judge concluded it was inapplicable in this matter as there was "sufficient" extrinsic evidence to determine the parties' intent when contracting, and "the parties were not of unequal bargaining power."

The trial court's cogent findings are supported by the evidence presented in the bench trial. In a 2004 email exchange, Hamilton offered, and plaintiff accepted, incentive compensation "upon [property] closings" and "on the basis of value creation." Additionally, plaintiff expressed interest in executing an incentive agreement to ensure defendants' "success" and wanted incentive compensation for the "significant profits" he previously created on defendants' behalf for other projects. As defendants did not profit from a successful Union

project, the trial court correctly determined plaintiff was not entitled to incentive compensation under the parties' agreement.

Plaintiff also contends the trial court erred by not applying the doctrine of contra proferentem. We agree the doctrine was inapplicable under these circumstances. If a court is unable to determine the meaning of a term in a contract, it may utilize the doctrine and "adopt the meaning that is most favorable to the non-drafting party." Pacifico v. Pacifico, 190 N.J. 258, 267 (2007) (citing 5 Corbin on Contracts § 24.27 (Perillo ed., rev. ed. 1998)). Here, however, after reviewing the evidence, the trial court made findings as to the parties' intent at the time of their contract as to the term "distribution." Therefore, resort to the doctrine was unnecessary.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1394-17T1